UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-00117-R

**DEBORAH JOHNSON**                                                                                      **PLAINTIFF**

v.

**TG AUTOMOTIVE SEALING KENTUCKY, LLC**                                       **DEFENDANT**

**MEMORANDUM OPINION**

This diversity action is before the Court upon the Defendant's Motion for Summary Judgment. Docket Number ("DN") 12. The Plaintiff has responded. DN 18. The Defendant has replied. DN 19. Fully briefed, this matter is now ripe for adjudication. For the following reasons, the Defendant's motion is GRANTED.

**BACKGROUND**

From June 2005 until the latter half of 2009, the Plaintiff, Deborah Johnson ("Johnson"), worked at the Hopkinsville, Kentucky manufacturing plant of the Defendant, TG Automotive Sealing Kentucky, LLC ("TGASK"). In a September 8, 2009 letter, TGASK terminated Johnson's employment because it determined that she had falsified certain training records. Because Johnson previously received a "Final Warning," arising from a separate incident at the plant, Johnson's falsification of the training records served as grounds for termination. Johnson later sued TGASK for violation of the Kentucky Civil Rights Act, KRS § 344.010 *et seq.*, claiming that TGASK terminated her because of her race. Johnson, who is African-American, contends that at least one other Caucasian employee also falsified her training records but was not terminated.

1

Johnson was hired by TGASK in June of 2005.  Upon joining the company Johnson received a copy of TGASK's Team Member Handbook, which contains The employment policies, practices, and expectations that governed Johnson's work environment.  During her time at TGASK, Johnson signed two acknowledgements that she had received a copy of the handbook.  DN 12-4, pp. 10-11.

Johnson's work history at TGASK was not without blemish.  From February 2007 through May 2009, Johnson received four "Corrective Action" notices for violations of various company policies.  Johnson refused to sign all but one of the notices.  TGASK's company policy directs employees to use the "Problem Resolution Procedure" to "voice concerns about . . . any job-related problems."  DN 22-7, p. 8.  The use of the resolution procedure, however, does not "in any way . . . prevent[], limit[], or delay[] TGASK's right to take correction actions against any [employee], up to and including termination, in circumstances where TGASK deems corrective action appropriate."  *Id.* at 9.  There is no record that Johnson used the Problem Resolution Procedure to resolve any of the Corrective Action notices she refused to sign, and nothing in company policy suggests that refusing to sign would prevent TGASK from terminating her.

Johnson received a "Final Warning" as the result of an incident occurring on May 1, 2009.  On that day, Johnson's supervisor, Shirley Hall, asked her to check a box of parts and prepare them for shipment.  DN 12-3, ¶ 11.  Instead of completing the task, Johnson put the parts under a table in her work area, where they were discovered after missing a shipping deadline.  *Id.*  A May 6, 2009 Corrective Action notice recorded these events and lists the "Corrective Action Taken" as a "Final Warning."  DN 12-5, p. 6.  A "Final Warning" is the "last step in [TGASK's] progressive disciplinary procedure."  DN 12-4, p. 8.  Once an employee receives a "Final

Warning," he or she will receive "no additional chances - if the [employee] does not take action immediately and change their job performance, the [employee] will be terminated without any additional warnings." *Id.* According to William Doughman ("Doughman"), TGASK's human resources manager, the May 6, 2009 Final Warning put Johnson on notice that the next violation of company policy "would lead to termination." DN 12-3, ¶ 11.

In 2009, TGASK sought to obtain "TS 16949 certification" so that it could continue to bid on production jobs from Ford Motor Company, one of TGASK's main customers. Failure to obtain certification would disqualify TGASK from bidding on Ford's business. The TS certification process required TGASK's employees, including Johnson, to undergo specific types of training for various machines or production processes. Employees were required to complete the TS training regardless of prior experience or ability. Once an employee completed training on a specific machine, the employee was required to sign, and the instructor conducting the training session was required to initial, an "Instruction Training/Competence" sheet ("signature sheet"). A signature sheet existed for each machine or process and recorded which employees had completed the required TS training. Only one signature sheet existed per machine or process, and all employees completing that particular training signed the same sheet.

TGASK was scheduled to undergo a final audit for TS certification in November of 2009. In preparation for this audit, which would be conducted by an external TS Certification Auditor, TGASK conducted its own internal audit in September of 2009. During the internal evaluation, auditors discovered that Johnson's name was signed to several signature sheets but lacked the initials of an instructor, which would have verified her training. After review by investigating personnel, it was determined that Johnson signed thirteen (13) different signature sheets without actually completing the mandatory TS training.

3

On September 4, 2009, Doughman met with Johnson to discuss the discrepancies found on the signature sheets. According to Doughman, Johnson admitted to signing the sheets without receiving the appropriate training. *Id.* at ¶ 18. In her deposition, Johnson admitted that, even though she had previously received other types of training, she did not complete the re-training required for TS certification before signing the signature sheets. DN 12-9, pp. 8-9, 17. At the end of the September 4, 2009 meeting, Doughman suspended Johnson because the Team Member Handbook requires TGASK employees to "[b]e honest in his/her dealings with TGASK . . ." and falsifying training records was a violation of this policy. DN 12-4, p. 7.

Next, Doughman reviewed Johnson's personnel file. Upon review, Doughman found the Final Warning that resulted from the May 6, 2009 Corrective Action notice. At the time of his review, Doughman did not find any indication or documentation that the Final Warning had been modified or rescinded. DN 12-3, ¶ 11. If the Final Warning had been changed, "there would have been attachments and other markings on that record indicating it has been rescinded or modified." *Id.* Because Johnson had previously received a Final Warning, Doughman determined that Johnson's "dishonesty in falsifying records was grounds for termination of employment pursuant to [TGASK] policies." *Id.* at ¶ 19. As a result, Doughman sent Johnson the September 8, 2009 termination letter, ending her employment with TGASK. *See* DN 18-2.

Johnson disputes most of the facts as laid out above. Most importantly, she denies that she falsified her training records. Instead, she contends that her supervisor, Shirley Hall, instructed her to sign the signature sheets without completing the required training. DN 12-9, pp. 2-4. According to Johnson, Hall had her sign the signature sheets without completing the training because Johnson already knew how to do all of the jobs that required training. *Id.* at p. 5. In fact, Johnson claims that the TS certification process was nothing more than an way for

4

TGASK to raise the prices it charged Ford Motor Company.  DN 22-1, p. 3.  As such, the accompanying training program was merely a cover for raising prices, and Johnson did not need to complete the training in order to be able to do her job.  Johnson further alleges that she signed the training records because she was afraid that Hall would "write her up" as Hall had done for the May 1, 2009 incident that caused Johnson to receive a Final Warning.  DN 12-9, pp. 4-6.

Johnson also contends that at the time of her termination the prior Final Warning had been rescinded.  According to Johnson, Mike Storm, a manager at TGASK told her he had "taken care of it."  *Id.* at 13.  Although Johnson believes Storm rescinded her Final Warning, she admits that that no one ever told her that the warning had actually been removed from her personnel file.  *Id.*

Finally, Johnson disputes TGASK's reason for terminating her.  Johnson believes that she was fired because of her race, not because of the falsification of training records or job performance.  *Id.* at p. 19.  As evidence of racial discrimination by TGASK, Johnson contends that a Caucasian employee, Denise Beville, also falsified her training records but was not terminated for doing so.  *Id.* at pp. 19-21.  This, Johnson argues, is evidence that TGASK treated a similarly-situated, Caucasian employee differently and shows that the company fired Johnson because of her race.  *Id.* at p. 21.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

TGASK moves for summary judgment on two grounds. First, it argues that summary judgment is appropriate because Johnson cannot establish the *prima facie* case of racial discrimination. Second, TGASK argues in the alternative that even if Johnson can show the *prima facie* case, summary judgment is appropriate because no reasonable jury could find that the company's proffered reasons for firing her were a pretext for racial discrimination. The Court addresses both of these arguments.

### A. Johnson cannot establish the p*rima facie* case of racial discrimination.

Johnson sued TGASK for violation of the Kentucky Civil Rights Act ("KCRA"). Specifically, Johnson claims that TGASK violated KRS § 344.040(1)(a), which makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race . . . ." Although Johnson has not sued under Title VII of the federal civil rights laws, courts use the standards of Title VII to evaluate claims of racial discrimination brought pursuant to the KCRA. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) ("Because the [KCRA] mirrors Title VII of the Civil Rights Act of 1964, we use the federal standards for evaluating race discrimination claims.").

When alleging racial discrimination in employment, the plaintiff bears the burden of establishing the *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (U.S. 1973). The *prima facie* case may be established "by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted). If relying on circumstantial evidence, the plaintiff establishes the *prima facie* case by showing: "(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class." *Id.* (citations omitted). A plaintiff need not show she was replaced by a person outside of the protected class in order to establish the fourth element. Instead, it is sufficient for a plaintiff to show that, as a member of a protected group, she "was treated differently than similarly-

situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

In the present case, Johnson offers no direct evidence of racial discrimination, and, instead, relies on circumstantial evidence to establish the *prima facie* case. TGASK appears to concede the first three elements, instead arguing that Johnson has not presented any evidence that she was treated differently than a similarly-situated, non-minority employee. The Court will review the evidence presented in order to determine whether Johnson has established the fourth element. When ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That said, in a case alleging racial discrimination, the plaintiff still bears the burden of initially establishing the *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802.

### 1.  *Johnson Relies on Inadmissible Hearsay as Proof of the Fourth Element of the* Prima Facie *Case.*

In her response brief, Johnson claims to have established the fourth element of the *prima facie* case by showing that Denise Beville, a Caucasian employee at TGASK, falsified her training records but was not terminated. The only evidence Johnson presents on this issue is hearsay, and the Court finds no other evidence that substantiates her allegations. Johnson claims that Beville signed the signature sheets without completing the training. DN 12-9, p. 19. Despite this claim, Johnson admits that she did not actually see Beville's signatures on the signature sheets. *Id.* at p. 20. Instead, she claims that three others, Penny Riley, Sharon Standard, and Jerome Moorehead, told her that Beville had falsified her training records. *Id.* at 20. When pressed on this issue, Johnson admitted that Jerome Moorehead did not actually tell her that Beville had falsified the records. *Id.* at 21. Johnson admits that she only believes her race was the cause of her firing because others told her that Beville falsified her training records

8

but was not terminated. *Id.* These statements made by others, and used by Johnson to prove the truth of the matter asserted, are clearly hearsay, which would be inadmissible at trial. *See* FED. R. EVID. 802.

In the context of summary judgment, the general rule is that "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley v. United States*, 20 F.3d. 222, 226 (6th Cir. 1994) (citation omitted). That being said, "[t]he submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Evidence presented in an inadmissible form can be considered on a motion for summary judgment if the party presenting the evidence can show that "she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue of material fact exists, and that a trial is necessary." *Id.* (emphasis original). Thus, courts may consider evidence offered in an inadmissible form so long as the party offering the evidence shows its substance can be made admissible at trial.

In the present case, Johnson has made no effort to show that the hearsay statements of Penny Riley or Sharon Standard could be presented in an admissible form at trial. Although Johnson claims that these two told her that Beville falsified her training records, Johnson has not offered testimony from these individuals. Johnson has not attached their affidavits, taken their depositions, or other otherwise shown that a hearsay exception applies to their statements. In short, Johnson has not shown that the substance of the hearsay statements would admissible at trial.

In her response brief, Johnson asks the Court to considered the hearsay statements because TGASK has not produced statements from these employees "refuting Johnson's claim if

9

she was not telling the truth." Johnson's position wholly ignores the fact that she bears the burden of proof for establishing the *prima facie* case. TGASK is under no obligation to offer evidence to rebut claims that Johnson carries the initial burden for and has failed to establish. Johnson claims that the *prima facie* case is established because TGASK has not refuted the hearsay evidence which allegedly proves the fourth element. Because hearsay testimony that is not otherwise shown to be admissible cannot be considered in a motion for summary judgment, the Court finds that Johnson has produced no evidence that a similarly-situated, non-minority employee was treated differently after participating in the same conduct that lead to Johnson's firing.

### 2. *TGASK's evidence shows Johnson was not similarly-situated to Denise Beville.*

Even though TGASK has no initial burden as to the fourth element, it submitted evidence demonstrating two reasons why Johnson and Beville were not similarly-situated employees. First, TGASK submitted exhibits showing Johnson signed the signature sheets without completing the required training. Denise Beville's signature also appears on two of the same signature sheets as Johnson's. DN 12-6, pp. 7, 27. Unlike Johnson's signatures, however, Beville's signatures are accompanied by the initials of the instructor who conducted her training. *Id.* Other than hearsay, Johnson has submitted no evidence that Beville falsified her training records. TGASK, on the other hand, has submitted evidence showing Beville did not falsify her training records. Johnson has failed to raise a genuine issue as to whether Beville falsified her training records, and the evidence in the record shows that Beville was not similarly-situated to Johnson because Beville did not falsify her training records.

Second, even if the evidence proved that Beville falsified her training records, she still would not have been similarly-situated to Johnson because there is no evidence that Beville had

10

been issued a Final Warning. According to TGASK, Johnson was not fired merely because she falsified her training records. Johnson was fired only after William Doughman reviewed her personnel file and found she had been issued a Final Warning. DN 12-3, ¶ 19. Johnson has presented no evidence and the case record does not reveal that Beville had also received a Final Warning. Thus, even if Beville had falsified her training records, she would not have been similarly-situated to Johnson because she had not received a Final Warning.

Because Johnson did not show that Beville received a Final Warning, Johnson additionally argues that she was similarly-situated to Beville because her own Final Warning had been rescinded by Mike Storm, a TGASK manager. In her deposition, Johnson testified that the Final Warning was no longer enforceable because Storm told her he "had taken care of it." DN 12-9, p. 13. Johnson has made no effort to show that Storm's statements are admissible. Despite this fact, the Court will assume, for the purpose of analysis, that Storm's statements would likely be admissible because Storm was a TGASK manager operating within the scope of his employment, and statements made within the scope of employment by a party's employee are admissible as "not hearsay." *See* FED. R. EVID. 801(d)(2)(D).

Even if Storm's statements are admissible, there is no evidence that Doughman was aware that the Final Warning has been rescinded when he terminated her. In fact, the evidence shows the opposite, and Doughman operated under an "honest belief" that the Final Warning was enforceable at the time he terminated Johnson. "To inquire into the defendant's 'honest belief,' the court looks to whether the employer can establish 'reasonable reliance' on the particularized facts that were before the employer when the decision was made." *Balmer v. HCA, Inc.*, 423 F.3d 606, 614 (6th Cir. 2005) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). In the present case, Doughman's affidavit walks through the steps he took

11

when investigating and then terminating Johnson.  DN 13-3, ¶¶ 16-20.  The affidavit shows that Doughman saw no indication that the Final Warning had been rescinded prior to September 4, 2009.  At no point in Doughman's investigation did Johnson tell him that Storm had rescinded her Final Warning, and Johnson did not mention Storm's statements until her deposition, well after she had been terminated.

The "honest belief" standard is judged based on the "particularized facts that were before the employer *when the decision was made*."  *Balmer*, 423 F.3d at 614 (emphasis added).  At the time of Doughman's investigation, the Final Warning in Johnson's personnel file "was still in effect and there was no indication that the warning had been rescinded or modified."  *Id.* at ¶ 11.  If it had been modified, there would have been some indication in Johnson's personnel file that it was no longer applicable.  *Id.*  Based on this evidence, and the fact that Johnson only mentioned Storm's statements for the first time during her deposition, the Court finds that Doughman was operating under an "honest belief" that the Final Warning was still enforceable at the time terminated Johnson.  The record is clear that Doughman was not aware of, and Johnson did not bring to his attention, any statements or actions by Storm that rescinded or modified the Final Warning.  Without knowledge of Storm's actions, Doughman was operating under an honest belief that the Final Warning was still enforceable when he fired Johnson.  Because Doughman operated under an honest belief, Johnson cannot show that she was treated differently than a similarly-situated, non-minority employee.

In summary, the Court finds that Johnson has failed to establish the fourth element in the *prima facie* case of racial discrimination under the KCRA.  Johnson's only evidence that she was similarly-situated to Denise Beville is hearsay, and TGASK has shown that Johnson was not similarly-situated to Beville because Beville did not falsify her training records and had not been

12

issued a Final Warning. Johnson has failed to put forth admissible evidence that a similarly-situated, non-minority employee was not terminated after participating in the same or similar conducted that caused Johnson to lose her job. As such, Johnson has not raised a genuine disputed as to any material fact regarding the fourth element of the *prima facie case* of racial discrimination. Because Johnson cannot point to any similarly-situated, non-minority employees who were treated differently, TGASK is entitled to summary judgment as a matter of law.

> **B. No reasonable jury could find that the TGASK's proffered reasons for terminating Johnson were a pretext for racial discrimination.**

The Court has found that TGASK is entitled to summary judgment because Johnson failed to establish the *prima facie* case for racial discrimination under the KCRA. TGASK has, in the alterative, also moved for summary judgment on the grounds that no reasonable jury could find that its proffered reasons for terminating Johnson were a pretext for racial discrimination. The Court agrees. Even if the Court found that Johnson had established the *prima facie* case, she has presented no evidence showing that the proffered reasons for her termination were a pretext for racial discrimination.

As stated above, the plaintiff in a racial discrimination case under the KCRA (applying the standards of Title VII) has the burden of establishing the *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff has done so, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the" employer's adverse action. *Id.* If the employer offers a legitimate reason for its actions, the burden shifts back to the plaintiff to show that the proffered reason for the employer's decision is merely a pretext for discrimination. *Id.* at 804.

For the purpose of this portion of the analysis, the Court will assume that Johnson established the *prima facie* case. Upon showing that the *prima facie* case has been established,

13

the burden of proof shifts to TGASK to show a legitimate, nondiscriminatory reason for its adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (U.S. 1981) ("The burden that shifts to the defendant . . . is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason."). The defendant does not need to convince the court that "it was actually motivated by the proffered reasons." *Id.* It is enough that the defendant "clearly set[s] forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255.

In the present case, TGASK claims that it has articulated a legitimate, nondiscriminatory reason for terminating Johnson. According to TGASK, Johnson was fired on September 8, 2009, for falsifying her training records, a violation of the TGASK policy requiring employees to be honest with the company. In addition, Johnson was also subject to a Final Warning at the time she falsified the training records. TGASK's employee handbook clearly states that after receiving a Final Warning an employee will not receive additional warnings and will be subject to termination for further violations of company policy. There is no question that Johnson received a copy of the handbook. The combination of the falsified records and the Final Warning resulted in Johnson's termination. The Court finds that TGASK has articulated a legitimate, nondiscriminatory reason for terminating Johnson's employment on September 8, 2009.

Once the defendant offers a legitimate, nondiscriminatory reason for its adverse employment action, the burden shifts back to the plaintiff to show "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253 (citing *McDonnell Douglas*, 411 U.S. at 804). A plaintiff

may demonstrate pretext by showing "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's actions." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 545 (6th Cir. 2008) (citing *Manzer v. Diamond Shamrock Chems. Co.* 29 F.3d 1078, 1084 (6th Cir. 1994)). No matter which method is used to show pretext, "the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant intentionally discriminated against him.'" *Id.* (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).

In the present case, Johnson does not explicitly rely upon any of the three preceding theories to show TGASK's actions were a pretext for racial discrimination. Instead, Johnson simply offers that "a jury could find that 'TGASK's' proffered reason for its actions was pretextual." The Court finds that that even if Johnson had argued each of three pretext theories, she has presented no evidence upon which a reasonable jury could find that TGASK's actions were a pretext for racial discrimination. First, Johnson has not shown that TGASK's proffered reason for termination has no basis in fact. *Imwalle*, 515 F.3d 545. TGASK presented evidence that Johnson was fired because she violated company policy by falsifying her training records after having been issued a Final Warning. It is clear that Johnson falsified the records. She admitted that she was not retrained under the TS standards even though she signed the signature sheets. DN 12-9, pp. 7-9. Additionally, the record shows that at the time of her termination, Johnson told no one that her Final Warning had been rescinded by Mike Storm. Even if Mike Storm's statements that he had "taken care of it" are admissible, the evidence shows that Doughman operated under an "honest belief" that the Final Warning was enforceable at the time

15

he fired Johnson.  Thus, Johnson has not shown pretext by rebutting TGASK's factual basis for her termination.

Second, Johnson has not shown that TGASK's proffered reason for her termination was not its actual reason for terminating her.  *Imwalle*, 515 F.3d 545.  TGASK claims it fired Johnson for violating company policy, and Johnson believes she was fired because of her race.  In her deposition, Johnson claimed that at least two TGASK employees told her that Denise Beville, a Caucasian employee, also falsified her training records but was not terminated.  As discussed above, Johnson's evidence on this point in hearsay, and she has not put forth any admissible evidence showing that TGASK's proffered reason was not its actual reason for firing her.  Johnson bears the burden of proof for showing pretext but has not carried the burden of showing TGASK's proffered reasons for terminating her were not its real reasons.

Finally, Johnson has failed to show that TGASK's proffered reasons for firing her were insufficient to explain the company's actions.  *Imwalle*, 515 F.3d 545.  Attached to her response brief, Johnson submitted a decision of the Kentucky Unemployment Insurance Commission.  DN 18-7.  The Commission determined that Johnson should not be denied unemployment benefits because she had been fired for some reason other than falsifying training documents.  DN 18-7, p. 2.  Johnson relies on this decision to show TGASK's proffered reasons for firing her were insufficient because the Commission's decision is a "juridical finding that repudiated the Defendant's alleged reasons for firing her."

Johnson inappropriately relies on the Commission's decision.  Statutes governing the Kentucky Unemployment Insurance Commission clearly state:

> No finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive or binding in any separate or subsequent action or proceeding in another forum . . . .

16

KRS § 341.410(5). When considering the use of the Commission's decisions in subsequent proceedings, Kentucky courts have held:

> An unemployment compensation hearing is designed to adjudicate promptly a narrow issue of law, and to grant a limited remedy to an unemployed worker. The use of an unemployment compensation decision to bind the parties in a subsequent . . . action . . . would be wholly inappropriate . . . .

*Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001) (quoting *Board of Educ. v. Gray*, 806 S.W.2d 400, 403 (Ky. App. 1991)). It is clear then, that the Commission's decision is not binding on this Court and is not evidence to be considered in an employment discrimination case arising under the KCRA. Johnson's reliance on the Commission's decision is misplaced and does not show that TGASK's proffered reasons for firing her were insufficient to explain TGASK's actions.

Based on the above analysis, the Court finds that no reasonable jury could find that TGASK's proffered reasons for terminating Johnson were a pretext for racial discrimination. Johnson has offered limited evidence to rebut TGASK's legitimate, nondiscriminatory reason for firing her. The evidence that Johnson has submitted is either hearsay or a non-binding decision of an administrative panel that did not consider the issue of racial discrimination. Without evidence to support her claim, Johnson cannot show that a genuine dispute exists as to whether TGASK's proffered reason was merely a pretext. Even if the Court found that Johnson established the *prima facie* case, TGASK would still be entitled to summary judgment because, as a matter of law, Johnson failed to put forth evidence to rebut TGASK's legitimate, nondiscriminatory reasons for terminating her.

## CONCLUSION

The Defendant has moved for summary judgment, arguing that the Plaintiff has not established the *prima facie* case of racial discrimination, or, in the alternative, that the Plaintiff

cannot show that the Defendant's actions were a pretext for racial discrimination. For the reasons set forth in this opinion, the Defendant's Motion for Summary Judgment is GRANTED. An appropriate order shall issue.